UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGINALD BAYLOR,

        Petitioner,

                                  CASE NO. 05-CV-71624-DT
v.                            HONORABLE DENISE PAGE HOOD

PAUL RENICO,

        Respondent.
_____/

**I. INTRODUCTION**

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

**I.      INTRODUCTION**

Michigan prisoner Reginald Baylor ("Petitioner") has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of two counts of armed robbery, Mich. Comp. L. § 750.529, two counts of first-degree criminal sexual conduct ("CSC I"), Mich. Comp. L. § 750.520b, second-degree criminal sexual conduct ("CSC II"), Mich. Comp. L. § 750.520c, assault with intent to commit criminal sexual conduct, Mich. Comp. L. § 750.520g(1), first-degree home invasion, Mich. Comp. L. § 750.110a(2), carjacking, Mich. Comp. L. § 750.520a, kidnapping, Mich. Comp. L. § 750.349, felon in possession of a firearm, Mich. Comp. L. § 750.224f, and possession of a firearm during the commission of a felony, Mich. Comp. L. § 750.227b, following a jury trial in the Genesee County Circuit Court. He was sentenced as a third habitual offender to concurrent terms of 25 to 50 years imprisonment and 40 to 60 years on the armed robbery convictions, 25 to 50 years imprisonment and life imprisonment on the CSC I

1

convictions, 10 to 30 years imprisonment on the CSC II conviction, 8 to 20 years imprisonment

on the assault conviction, 20 to 40 years imprisonment on the home invasion conviction, 40 to 60

years imprisonment on the carjacking conviction, 40 to 60 years imprisonment on the kidnapping

conviction, 4 to 10 years imprisonment on the felon in possession conviction, and a consecutive

term of two years imprisonment on the felony firearm conviction.

In his pleadings, Petitioner raises claims concerning prosecutorial misconduct, the

effectiveness of trial counsel, the loss of evidence, and his life sentence. Respondent has filed an

answer to the petition contending that it should be denied. For the reasons stated herein, the

Court agrees and denies the petition for writ of habeas corpus.

## II.    FACTS AND PROCEDURAL HISTORY

Petitioner's convictions arise from his actions during a criminal incident which occurred

in Flint, Michigan on November 22, 2001. The Michigan Court of Appeals set forth the

underlying facts of the crime, which are presumed correct on habeas review, *see Monroe v.

Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 Fed. Appx. 730 (6th Cir. 2002), as

follows:

> In this case, defendant donned a "Scream" mask and broke into the female
> victim's home with some accomplices. He forced the female victim away from her
> boyfriend at gunpoint, removed her to a secluded area while others guarded the
> boyfriend, fondled her breasts, forced her to undress, and penetrated her rectum
> with the barrel of his pistol and his finger. He also told her she was lucky that his
> penis "couldn't get hard." According to police, defendant was found with the
> victims' drivers licenses, stolen pay stubs, and over $1,000 in cash shortly after he
> fled the male victim's stolen car. The male victim was still locked in the trunk
> when police pulled up to the car.

*People v. Baylor*, No. 244701, 2004 Mich. App. Lexis 961, 2004 WL 816914, *1 (Mich. Ct.

App. April 15, 2004) (unpublished).

Following his convictions and sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals raising five claims, including the four presented on habeas review. The Michigan Court of Appeals affirmed his convictions and sentence. *See People v. Baylor*, No. 244701, 2004 WL 816914 (Mich. Ct. App. April 15, 2004) (unpublished). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *See People v. Baylor*, 471 Mich. 885, 688 N.W.2d 502 (2004).

Petitioner, through the State Appellate Defender Office, thereafter filed the present habeas petition, raising the following claims as grounds for relief:

I.      The prosecutor violated his state and federal due process rights to a fair trial by improperly attempting to evoke an emotional response from the jurors by appealing to their sympathy for the victims.

II.     His federal and state constitutional rights to the effective assistance of counsel and a fair trial were violated where, for the numerous reasons set forth below, he was prejudiced by his lawyer's failure to perform at an objective standard of reasonable competence.

III.    The prosecution's grossly negligent loss of crucial evidence denied him a fair trial and denied him the opportunity to refute the prosecutor's case against him.

IV.     His sentence of life in prison constitutes cruel and unusual punishment.

Respondent, through the Michigan Attorney General's Office, has filed an answer to the petition contending that it should be denied.

## III.    STANDARD OF REVIEW

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997). The AEDPA provides:

3

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16, 124 S. Ct. 7, 157 L. Ed. 2d 263 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (internal citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, §2254(e)(1) requires that this Court presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Id.*; *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

IV.     ANALYSIS

A.     **Prosecutorial Misconduct Claim**

Petitioner first asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by appealing to the jurors' emotions and sympathies during opening statements and closing arguments. In particular, Petitioner objects to the prosecutor's characterization of the crime as cruel, terrifying, and horrifying, his remarks that Petitioner and his accomplices

5

inflicted as much pain and horror as possible upon the helpless victims, and his conduct in donning a Scream mask for a few moments at the start of closing arguments. Respondent contends that this claim is barred by procedural default and lacks merit.

Federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). A petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. *Wainwright*, 433 U.S. at 85; *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001); *see also Harris v. Reed*, 489 U.S. 255, 263-64, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989). The last *explained* state court judgment should be used to make this determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991).

The United States Court of Appeals for the Sixth Circuit employs a four-part test to determine whether a state procedural default bars federal habeas review. The inquiry is whether:

> (1) a state procedural rule exists that applies to the petitioner's claim, (2) the petitioner failed to comply with the rule, (3) the state court actually applied the state rule in rejecting the petitioner's claim, and (4) the state procedural rule is an adequate and independent ground upon which the state can rely to deny relief.

*Frazier v. Huffman*, 343 F.3d 780, 790 (6th Cir. 2003) (citing *Reynolds v. Berry*, 146 F.3d 345, 347 (6th Cir.1998)). All four parts of the test are met here. The Michigan Court of Appeals rendered the last reasoned opinion on this issue. In dismissing this claim, the court relied upon Petitioner's failure to object to the prosecutor's conduct at trial. *See Baylor*, 2004 WL 816914 at *1. The failure to make a contemporaneous objection is a recognized and firmly-established

6

independent and adequate state law ground for refusing to review trial errors. *See People v. Carines*, 460 Mich. 750, 761-63, 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman*, 501 U.S. at 750-51.

Petitioner admits that he did not object to the prosecutor's comments at trial, but asserts that the Michigan Court of Appeals did not substantially rely on the procedural default to deny him relief such that this Court may consider the merits of his prosecutorial misconduct claims. However, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *See Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). In this case, the Michigan Court of Appeals denied this claim based upon a procedural default – the failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. *Murray*, 477 U.S. at 488. A petitioner must present a substantial reason to excuse the default. *See Amadeo v. Zant*, 486 U.S. 214, 222, 108 S. Ct.

1771, 100 L. Ed. 2d 249 (1988); *Rust*, 17 F.3d at 161. Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *See McCleskey v. Zant*, 499 U.S. 467, 493-94, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991). Petitioner alleges ineffective assistance of counsel as cause to excuse his default. Petitioner, however, cannot establish that counsel was ineffective or that he was prejudiced so as to excuse his procedural default as this claim lacks merit.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 79 L. Ed. 1314 (1935). To prevail on a prosecutorial misconduct claim, a habeas petitioner must demonstrate that the prosecutor's remarks or conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974). The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002). First, the court must determine whether the challenged statements were indeed improper. *Id.* at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is determined by an examination of four factors: 1) whether the statements tended to mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused. *Id.*; *see also Broom v. Mitchell*, 441 F.3d 392,

8

412-13 (6th Cir. 2006). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must

be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so

gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.

1997) (internal citations omitted).

In reviewing this issue for plain error/miscarriage of justice, the Michigan Court of

Appeals concluded that Petitioner had not shown grounds for reversal based upon the

prosecutor's conduct.  The court explained:

> "Appeals to the jury to sympathize with the victim constitute improper argument." *People v. Watson*, 245 Mich. App 572, 591; 629 NW2d 411 (2001). Nevertheless, the prosecutor in this case was required to prove either fear or force to sustain the armed robbery and CSC I convictions, so the fact that the victims suffered terror and intimidation was relevant. *People v. Lawson*, 65 Mich. App 562, 566; 237 NW2d 559 (1975); MCL 750.520b(1)(f)(i) and (ii). The record does not reflect that the prosecutor mischaracterized any of this evidence in his arguments, so we do not find that the prosecutor committed misconduct by emphasizing the victims' state of fear. *People v. Bahoda*, 448 Mich. 261, 284; 531 NW2d 659 (1995). Additionally, the trial court instructed the jurors not to let sympathy or prejudice influence their decision, and these cautions were sufficient to cure any possible prejudice. *People v. Long*, 246 Mich. App 582, 588; 633 NW2d 843 (2001). Therefore, we do not find any grounds for reversal based on the prosecutor's conduct at trial.

*Baylor*, 2004 WL 816914 at *1.

Petitioner asserts that the prosecutor improperly invoked the jurors' sympathy for the

victims emphasizing the terrifying nature of the crime.  He objects to the following remarks

made by the prosecutor during opening statements:

> This case is so much more than just an armed robbery.  This case goes beyond that.  This case is about cruelty, about expanding the terror and the hurt and the pain way beyond what is necessary.

Trial Tr., Vol. I, p. 136.

This mask was the most terrifying thing that Tawyna Bright would ever see.

9

* * *

She's in terror for her life.

* * *

Tawyna Bright is terrified with fear.

*Id.* at 140, 144, 147.

Petitioner also objects to the prosecutor's conduct in donning a "Scream" mask for a moment at the start of closing arguments, and then making the following remarks:

> Ladies and gentlemen, I was trying to figure out a way to convey the horror that went on in this case for Twayna Bright and Kelsey Allen and being a lawyer, one thing I do is I resort to words to try to do that, so I tried to come up with some words to describe what happened in this case, and I brought out my thesaurus in order to try to help me to do that.
>
> I looked up the word frightened and saw that it had fearful, dreadful, dire, calamitous, shocking, terrible, awful, appalling, hideous, ghastly. I looked up the word cruel, and cruel it says brutal, inhuman, savage, ferocious, merciless, tyrannical. I looked up the word evil. Harm, misfortune, wickedness, depravity, immorality, vileness. And I though about Twayna Bright, and I looked up the word pain. Suffering, torture, torment, misery.
>
> I failed, I failed to try to find a word. This book did not help me. There are no words in the English language that can properly convey the essence of what this man did to those two victims in this case.

Trial Tr., Vol. IV, p. 73.

> This man went way beyond what was necessary to inflict as much pain and horror as possible, and that's what this trial is about.

*Id.* at 75.

> Think about that moment in time that [Ms. Bright] has to come to grips with her situation in that house, that door, that man and the mask that looks like this, how horrifying it must have been for her.

*Id.* at 76-77.

> I can't imagine how horrifying, what could she be thinking. She had to be thinking of her kids. One, not to have a mom. Are they going to do something to them? I can't imagine going through that frozen moment of terror created

10

       intentionally.... How horrifying it must have been.

*Id.* at 78-80.

       Defendant and his accomplices did everything they could to cruelly terrorize the victims...the victims were helpless, and they were victimized.

*Id.* at 100-01.

       It is well-settled that a prosecutor may not make remarks "calculated to incite the passions and prejudices of the jurors." *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991). A prosecutor improperly invokes the passions and prejudices of the jury when he or she "calls on the jury's emotions and fears – rather than the evidence – to decide the case." *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008).

       Having reviewed the record, the Court finds that most of the prosecutor's remarks during opening and closing statements were based upon the facts of the crime, the anticipated testimony, and the evidence actually presented at trial. For example, the prosecutor's use of the "Scream" mask and his general statements that the perpetrators' actions were horrifying and that the victims were placed in fear were based upon the victims' testimony. Additionally, the prosecutor was required to show fear or force to prove the elements of armed robbery and CSC I under state law. *See* Mich. Comp. L. § 750.529, Mich. Comp. L. § 750.520b. In commenting on the cruelty and terror imposed upon the victims, the prosecutor did not encourage the jurors to go outside the evidence or to send a message to the community. Nor did the prosecutor encourage the jurors to convict Petitioner to protect society.

       Some of the prosecutor's remarks about the heinous nature of the crime and the effects on the victims during closing arguments, however, were excessive and an improper appeal to the jurors' emotions and sympathy for the victims. Nonetheless, even if such comments or

11

actions are viewed as completely improper, they were not so flagrant or prejudicial as to warrant habeas relief under the circumstances of this case.  The statements, while deliberate, still arose from the facts of the crime and were not misleading in nature.  They were also not overly prejudicial given the significant evidence of Petitioner's guilt presented at trial, *e.g.*, the testimony indicating that the police chased a suspect fitting Petitioner's description and wearing a dark coat from the kidnapped victim's car, arrested Petitioner a short distance away without a coat at approximately 3:00 a.m. in late November, and recovered the victims' drivers licenses, the female victim's pay stubs, the male victim's wallet, and over $1,000 in cash from his person.  Additionally, Petitioner's alibi defense was weak given that it consisted of his own testimony that he was in the area for a drag race, had foregone a car ride home when a police car was sighted and people scattered, had walked to a friend's house but did not knock on the door, and was stopped by police while calling another friend for a ride.

Furthermore, the potential prejudice to Petitioner was mitigated by the fact that the trial court properly instructed the jurors on the law, explained that the attorneys' comments were not evidence, and directed them not to let sympathy or prejudice influence their decision.  *See Knapp v. White*, 296 F. Supp. 2d 766, 776 (E.D. Mich. 2003).  Jurors are presumed to follow the court's instructions.  *See United States v. Powell*, 469 U.S. 57, 66, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984) ("Jurors...take an oath to follow the law as charged, and they are expected to follow it.").  While the Court does not condone the prosecutor's actions, it does not find that his conduct was so extreme as to warrant habeas relief under the circumstances presented.

Petitioner also claims that the prosecutor improperly encouraged the jurors to identify with the victims and imagine the terror that they felt during the crime.  To the extent that the

prosecutor encouraged the jurors to place themselves in the shoes of the victims and imagine how horrifying the ordeal was for them, his remarks were improper. *See Hodge v. Hurley*, 426 F.3d 368, 384 (6th Cir. 2005) (closing arguments that encourage juror identification with crime victims are improper); *cf. Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (prosecutor engaged in misconduct by badgering and interrupting a witness, name-calling, predicting that the defendant would lie on the stand, stating that the defendant needs psychiatric help, appealing to class prejudices, encouraging juror identification with the victims, and vouching for the defendant's guilt). The prosecutor's improper statements, while deliberate, still arose from the facts of the crime and were not misleading. They were also not prejudicial given the significant evidence of Petitioner's guilt presented at trial and the fact that the trial court instructed the jurors that the attorneys' comments were not evidence and that they should not let sympathy or prejudice influence their decision. *See* discussion *supra*. Petitioner has not shown that the prosecutor's conduct rendered his trial fundamentally unfair.

In other words, to the extent that the prosecutor engaged in misconduct during closing arguments, such error was harmless. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993); *see also O'Neal v. McAninch*, 513 U.S. 432, 445, 115 S. Ct. 992, 130 L. Ed. 2d 947 (1995) (habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon jury's verdict). Harmless error analysis applies to claims of prosecutorial misconduct. *See Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003); *Maurino v. Johnson*, 210 F.3d 638, 644

13

(6th Cir. 2000).  Given the evidence of guilt presented at trial, any improper conduct on the part of the prosecutor did not have a substantial or injurious effect or influence on the jury's verdict. Petitioner has failed to establish cause or prejudice to excuse his procedural default as this claim lacks merit.

Petitioner has also not established that a fundamental miscarriage of justice has occurred.  The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent.  *See Schlup v. Delo,* 513 U.S. 298, 326-27, 115 S. Ct. 861, 130 L. Ed. 2d 808 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 615, 624, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998).  "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  *Schlup*, 513 U.S. at 324.  Petitioner has made no such showing.  Consequently, his prosecutorial misconduct claim is barred by procedural default, lacks merit, and does not warrant habeas relief.

### B.   Ineffective Assistance of Counsel Claims

Petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to object to the alleged prosecutorial misconduct, for failing to prepare a sufficiently broad discovery request, and for failing to adequately investigate and prepare an alibi witness for trial.  Respondent contends that these claims lack merit.

In *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas

14

petitioner has received the ineffective assistance of counsel.  First, a petitioner must  prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  466 U.S. at 687.  Second, the petitioner must establish that the deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.  *Id.* at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Id.* at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  *Id.*  "On balance, 'the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

Petitioner first asserts that counsel was ineffective for failing to object to the alleged instances of prosecutorial misconduct.  The Michigan Court of Appeals denied relief on this

15

claims finding that Petitioner could not establish that counsel was ineffective because the
prosecutor's arguments were "ultimately based on the case's extraordinary facts." *Baylor*, 2004
WL 816914 at *2.  This decision is neither contrary to *Strickland* nor an unreasonable
application thereof.  Given the Court's determination that the prosecutorial misconduct claim
lacks merit and does not warrant habeas relief, Petitioner cannot establish that counsel was
ineffective under the *Strickland* standard.  While counsel may have been deficient for failing to
object to the prosecutor's more egregious remarks, Petitioner has failed to establish that there is
a reasonable probability that, but for counsel's deficiencies, the result of the proceeding would
have been different.

      Petitioner also asserts that trial counsel was ineffective for failing to file a more
elaborate discovery request which would have revealed that the police did not have the
suspect's coat, gun, or mask, and that the police lost the evidence seized from Petitioner.  It is
well-established that defense counsel has a duty to conduct a reasonable investigation into the
facts of a defendant's case, or to make a reasonable determination that such investigation is
unnecessary.  *See Wiggins v. Smith*, 539 U.S. 510, 522-23, 123 S. Ct. 2527, 156 L. Ed. 2d 471
(2003); *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007)
; *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005); *O'Hara v. Wigginton*, 24 F.3d 823, 828
(6th Cir. 1994).  "American Bar Association standards ... also mandate counsel's duty to
investigate all leads relevant to the merits of the case." *Blackburn v. Foltz*, 828 F.2d 1177, 1183
(6th Cir. 1987); *see also Rompilla v. Beard*, 545 U.S. 374, 387, 125 S. Ct. 2456, 162 L. Ed. 2d
360  (2005) (noting that the ABA standards provide guidance for determining the
reasonableness of counsel's conduct).  The duty to investigate "includes the obligation to

16

investigate all witnesses who may have information concerning his or her client's guilt or

innocence." *Towns*, 395 F.3d at 258.  Inattention or negligence, as opposed to reasoned

strategic judgment, is inexcusable.  *See Wiggins*, 539 U.S. at 526; *Sims v. Livesay*, 970 F.2d

1575, 1580-81 (6th Cir. 1992).

The Michigan Court of Appeals denied relief on this claim finding that "the record

depicts defense counsel vehemently arguing that the absence of the crucial evidence created

reasonable doubt" such that counsel knew of these matters in time to prepare for trial.  *See*

*Baylor*, 2004 WL 816914 at *2.  This decision is neither contrary to *Strickland* nor an

unreasonable application of the law or the facts.  The record reflects that counsel made a

discovery request for all police reports in advance of trial and that he made a request for the

evidence seized from Petitioner two weeks before trial.  Defense counsel therefore knew, at the

time of trial, that the police had not found certain items during their investigation and had

returned or lost the seized evidence, retaining only photocopies of those items.  Counsel

capitalized on these issues at trial arguing that the loss of evidence, combined with

inconsistencies in the police reports, created a reasonable doubt as to Petitioner's guilt.

Petitioner has not shown how any additional action by defense counsel prior to trial would have

benefitted his defense.  Consequently, he has failed to establish that counsel was ineffective in

this regard.

Petitioner next asserts that counsel was ineffective for failing to adequately investigate

alibi witness, Richard Bridges, before trial.  The record indicates that counsel told the jury

during opening statements that Bridges would testify that Petitioner was at a drag racing rally.

Counsel did not call Bridges to testify, however, because Bridges subsequently informed

17

counsel that he could not remember the exact date of the rally.  Counsel briefly explained the situation to the jury during closing arguments.

The Michigan Court of Appeals denied relief on this claim noting that defense counsel did not call the witness because he could not recall the date of the rally and stating that the witness's loss of memory was outside the scope of defense counsel's conduct.  *See Baylor*, 2004 WL 816914 at *2.  This decision is neither contrary to *Strickland* nor an unreasonable application thereof.  While the failure to conduct a reasonable investigation into a case can constitute ineffective assistance of counsel, the record in this case reveals that counsel did investigate Bridges before trial and was told that he was with Petitioner at a rally on the date of the crime so as to support Petitioner's alibi defense.  At the time of trial, Bridges informed counsel that he could not recall the date of the rally.  Counsel thus reasonably determined not to call him to testify at that point.  Decisions as to what evidence to present and whether to call certain witnesses are presumed to be a matter of trial strategy, and the failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense.  *See Chegwidden v. Kapture*, 92 Fed. Appx. 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).  When making strategic decisions, counsel's conduct must be reasonable.  *See Roe v. Flores-Ortega*, 528 U.S. 470, 481, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000); *see also Wiggins*, 539 U.S. at 522-23.  Petitioner has not rebutted the presumption that counsel's conduct was reasonable and sound trial strategy.  Moreover, Petitioner was not deprived of a substantial defense given that he testified on his own behalf about his alibi – and that he planned to do so from the start of trial as reflected in defense counsel's opening statements.  Petitioner has failed to show that counsel was ineffective under

18

the circumstances.

Lastly, Petitioner claims that counsel was ineffective for failing to file a motion to dismiss based upon the Flint Police Department's failure to preserve the evidence seized from him at the time of his arrest. The Michigan Court of Appeals denied relief on this claim finding that Petitioner had failed to establish bad faith by the police or the exculpatory value of the evidence, such that any such motion by counsel would have been futile. *See Baylor*, 2004 WL 816914 at *3. This decision is neither contrary to *Strickland* nor an unreasonable application of federal law or the facts. Given the Court's determination that the loss of evidence claim lacks merit and does not warrant habeas relief, *see* discussion *infra*, Petitioner cannot establish that defense counsel was deficient and/or that he was prejudiced by counsel's conduct. Defense counsel cannot be deemed deficient for failing to make a futile motion. *See McQueen*, 99 F.3d at 1328. Additionally, as noted, counsel was able to argue that the lost evidence provided reasonable doubt of Petitioner's guilt at trial. Petitioner has failed to establish that counsel was ineffective under the standard set forth in *Strickland*. Accordingly, Petitioner is not entitled to relief on his ineffective assistance of counsel claims.

### C.    Loss of Evidence Claim

Petitioner next asserts that he is entitled to habeas relief because the police were "grossly negligent" and lost evidence crucial to his case, namely the victims' drivers licenses, check stubs, wallet, and cash seized from Petitioner at the time of his arrest. The record indicates that the police returned the drivers licenses and cash to the victims and lost the check stubs and wallet, but retained photocopies of the items. Respondent contends that this claim lacks merit and does not warrant relief from this Court.

19

The failure of police to preserve potentially useful evidence for a defendant is not a denial of due process of law unless the defendant can show bad faith on the part of police.  *See Arizona v. Youngblood*, 488 U.S. 51, 57-58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988); *see also Illinois v. Fisher*, 540 U.S. 544, 548, 124 S. Ct. 1200, 157 L. Ed. 2d 1060 (2004) (per curiam). When the state fails to preserve evidentiary material "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," a defendant must show:  (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means.  *Monzo v. Edwards,* 281 F.3d 568, 580 (6th Cir. 2002).

A habeas petitioner has the burden of establishing that the police acted in bad faith in failing to preserve potentially exculpatory evidence.  *See Malcum v. Burt,* 276 F. Supp. 2d 664, 683 (E.D. Mich. 2003).  The mere fact that the police had control over evidence and failed to preserve it is insufficient, by itself, to establish bad faith, nor will bad faith be found in the government's negligent failure to preserve potentially exculpatory evidence.  *Id.*  "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed."  *Youngblood*, 488 U.S. at 56.  Further, "where the government is negligent, even grossly negligent, in failing to preserve potential exculpatory evidence, the bad faith requirement is not satisfied."  *United States v. Wright*, 260 F.3d 568, 571 (6th Cir. 2001).

The Michigan Court of Appeals denied relief on this claim, stating:

Loss of evidence is not a ground for reversal unless the defendant first demonstrates either "that the evidence was exculpatory or that the police acted in

20

bad faith." *People v. Johnson,* 197 Mich App 362, 365; 494 NW2d 873 (1992). Here, defendant argues that the missing items did not bear his fingerprints, so the items would have exculpated him. The evidentiary value of the absence of defendant's fingerprints is negligible, however, and any argument that they might contain other fingerprints would be speculative. Therefore, defendant has not shown that the evidence was exculpatory in nature, and he fails to demonstrate any bad faith by the police.

*Baylor*, 2004 WL 816914 at *2.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. Petitioner has failed to show that the police acted in bad faith in failing to preserve the evidence seized from him at the time of his arrest. The mere fact that the police may have been negligent, or even grossly negligent, in returning the victim's identification and money and in misplacing the other seized materials, is insufficient to show that the police acted in bad faith. Additionally, the possible exculpatory value of the evidence, specifically fingerprints found or not found on the evidence, was negligible given the police testimony that they seized the items from Petitioner directly. Also, several individuals may have handled the money, licenses, and check stubs at issue, thereby minimizing the viability of fingerprint analysis. Because only further testing on the seized materials could have revealed its supposed exculpatory value, it constitutes "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 58; *see also Schad v. Schriro*, 454 F. Supp. 2d 897, 914 (D. Ariz. 2006) ("The presence, let alone the exculpatory value, of fingerprints . . . is a matter of pure speculation" and "falls into the 'potentially useful' category" to which "the *Youngblood* standard applies."); *cf. Wright*, 260 F.3d at 571. Petitioner has failed to establish that the police acted in bad faith and has not shown that the lost evidence was exculpatory.

21

Habeas relief is therefore not warranted on this claim.

     **D.**     **Sentencing Claim**

     Lastly, Petitioner asserts that he is entitled to habeas relief because his life sentence on one of his CSC I convictions constitutes cruel and unusual punishment under the Michigan Constitution and the Eighth Amendment to the United States Constitution. Respondent contends that this claim lacks merit. Claims which arise out of a state trial court's sentencing decision are not normally cognizable upon habeas review, unless the petitioner can show that the sentence imposed exceed the statutory limits or is wholly unauthorized by law. *See Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001).

     The Michigan Court of Appeals denied relief on this claim finding that the state legislature authorizes a life sentence for a CSC 1 conviction and that Petitioner's life sentence is proportionate given the nature of his crime and his criminal history and concluding that his sentence is not cruel and unusual punishment. *See Baylor*, 2004 WL 816914 at *3.

     This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. First, to the extent that Petitioner asserts that his sentence is improper or disproportionate under state law, he fails to state a claim for federal habeas relief. *See Austin v. Jackson*, 231 F.3d 298, 300 (6th Cir. 2000) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994). There is no federal constitutional right to individualized sentencing. *See United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Moreover, federal habeas relief does not lie for perceived errors of state law. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). State courts are the final arbiters of state law and federal courts will not intervene in such matters. *See*

*Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).

Second, Petitioner is not entitled to relief on his claim that his sentence constitutes cruel and unusual punishment under the Eighth Amendment. The United States Constitution does not require strict proportionality between a crime and its punishment. *See Harmelin v. Michigan*, 501 U.S. 957, 965, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583. A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin*, 213 F.3d at 301 (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). "Federal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *Thomas*, 49 F.3d at 261. Petitioner was sentenced as a third habitual offender to a parolable term of life imprisonment on one of his CSC I convictions. That sentence was within the statutory maximum of life imprisonment. *See* Mich. Comp. L. §§ 750.520b, 769.11. The trial court acted within its discretion in imposing Petitioner's sentence and there is no extreme disparity between his crime and sentence so as to offend the Eighth Amendment. Habeas relief is not warranted on this claim.

## V.   CONCLUSION

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition. Accordingly, the Court **DENIES WITH PREJUDICE** the petition for writ of habeas corpus.

23

**IT IS SO ORDERED**.


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  April 13, 2009

    I hereby certify that a copy of the foregoing document was served upon counsel of record on April 13, 2009, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager